**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO.: 1:09-CV-00071-TBR**

**DONNA NUYT**                                                                                             **PLAINTIFF**

**v.**

**SUN LIFE ASSURANCE COMPANY OF CANADA**                                **DEFENDANT**

**MEMORANDUM OPINION**

This matter is before the Court upon Plaintiff's Brief (Docket # 11). Defendant has responded (Docket #12). Plaintiff has replied (Docket #13). The Court has reviewed the administrative record (Docket #8). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion for judgment on the administrative record is DENIED and Defendant's cross motion is GRANTED.

**BACKGROUND**

Plaintiff, Donna Nuyt, was a participant in a long term disability insurance plan ("Plan") with Defendant, Sun Life Assurance Company of Canada, available to her through her employment at Logan Aluminum, Inc. Generally, the Plan pays benefits to a participant who is not able to perform the material and substantial duties of her "own occupation." SL 10-11. "Material and Substantial Duties" of her occupation is defined as "the essential tasks, functions, skills, or responsibilities required by employers for the performance of the Employee's own occupation." SL 9. "Own Occupation" means "the usual and customary employment . . . that the Employee performed as it is generally recognized in the national economy." SL 10. Eligibility for long term disability requires the employee satisfy the Elimination Period, provide poof of continued Total or Partial Disability, and have regular and continuing care by a Physician. SL 13. The employee is required to provide evidence demonstrating the disability to Defendant. SL 31. Defendant reserves

"the right to have any person, whose injury or sickness is the basis of a claim: examined by a physician." SL 29.

On October 12, 2007, Plaintiff applied to Defendant for benefits under the Plan. SL 100-113. Plaintiff stated she had first experienced symptoms of her allegedly disabling condition in August of 2006. SL 100.

Defendant obtained the records of Plaintiff's treatment with the medical providers she identified in her application: Amir Zia, M.D., Center for Integrative Medicine, Dr. Brandon Smith, as well as Dr. Harkelroad and Dr. Patrick Hayden. SL 101; 97. These records indicated that Plaintiff had undergone a series of chiropractic adjustments at Harkleroad Chiropractic for "tension" related tightness in her neck and shoulders beginning in December 2006 and continuing regularly until March 2007. SL 318, 321-23. Other than measuring Plaintiff's range of motion, Harkleroad Chiropractic did not perform any diagnostic tests and the records contain no diagnoses. SL 318-23.

In January of 2007, Plaintiff initiated treatment with Dr. Brandon Smith, a licensed acupuncturist, at the Center for Integrative Medicine, for pain in her shoulders and low back that she described as "moderate," as well as pain in her hips and left heel that she described as "severe." SL 284-88, 297-99. Dr. Smith did not initially provide a diagnosis, but recommended acupuncture weekly. SL 286-87. By March 2007, Plaintiff was able to decrease the frequency of her treatments to once every two weeks and reported a "50% decrease in pain." SL 291-94. In July 2007, Plaintiff decreased her treatments to once per month. SL 289-91. Notes dated in October 2007, stated "patient needs to stay on a fixed schedule in order to decrease her outbreaks of fibro." SL 290.

Plaintiff was also evaluated by Dr. Amir Zia, a neurologist. Dr. Zia stated Plaintiff has the following issues: peripheral neuropathy, fibromyalgia, evaluation for cervical and lumbar disease,

chronic pain, evaluation for autonomic nervous system dysfunction. SL 226. Dr. Zia recommended further testing. SL 226. Dr. Zia eventually diagnosed Plaintiff with fibromyalgia, POTS, and carpal tunnel syndrom. SL 220; 217. Dr. Zia's records indicate that he recommended Plaintiff "[c]ontinue work as much as possible;" stated "return to work–okay;" and Plaintiff "may return to work without any restrictions." SL 251; SL 262; SL 219.

During review of Plaintiff's claim, Defendant also contacted Susan Lewis, Employee Relations Specialist at Logan Aluminum. SL 93-99. Defendant also contacted Plaintiff about her condition. SL 336-37. Defendant sought an opinion from William Walker, an internal medical consultant, regarding whether the evidence provided by Plaintiff supported the conclusion that she was disabled. SL 351-53. Walker concluded the evidence provided did not support a finding that Plaintiff was disabled. SL 352. Defendant also sought an opinion from another internal medical consultant, Dr. Lee Okuroswki. SL 355-60. Dr. Okuroswki similarly concluded that the evidence in the record did not support a finding that Plaintiff was disabled. SL 356-60.

On March 26, 2008, Defendant denied Plaintiff's claim on the basis that the medical evidence did not support a conclusion that she was totally disabled, except for the one month period following the August 29, 2007 EMG/NCS test. SL 365-368. Because a disability of one month does not satisfy the elimination period set forth in the Plan, Defendant determined Plaintiff was not entitled to benefits for that one month period. SL 365-368.

On April 11, 2008, Plaintiff filed an administrative appeal. SL 371. In support of this appeal, Plaintiff provided a revised statement from Dr. Zia and an additional Attending Physician's Statement from Dr. Zia. SL 389; SL 380-382. The statements within these records differed from the prior records from Dr. Zia and placed restrictions on Plaintiff returning to work. No other

3

records were provided to explain the change in Dr. Zia's opinions.

Defendant sought an opinion from an external medical consultant, Dr. Anne MacGuire. SL 396-400. Dr. MacGuire reviewed all of the medical records, including the records submitted by Plaintiff on appeal, and concluded that the evidence did not support a finding of disability. SL 396-400. MacGuire noted Plaintiff's diagnoses of fibromyalgia and carpal tunnel syndrome. SL 396. Based on the diagnostic studies in the record, Dr. MacGuire concluded Plaintiff's carpal tunnel syndrom was mild and not functionally impairing and based on the serologic and radiologic studies concluded that any musculoskeltal conditions were not functionally impairing. SL 398. Defendant affirmed its denial of Plaintiff's benefits. SL 391-394. Plaintiff now moves this Court to find the decision of Defendant was arbitrary and capricious.

## STANDARD

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). This administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Generally, courts "review a plan administrator's denial of ERISA benefits *de novo*." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of

judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted). "[T]he Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). However, the Court may not substitute its own judgment for that of the plan administrator. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence– no matter how obscure or untrustworthy– to support a denial of a claim for ERISA benefits." *Id.*

## DISCUSSION

The parties agree that "arbitrary and capricious" is the appropriate standard of review. Plaintiff believes that Defendant's denial of benefits was arbitrary and capricious because (1) the Plan is both administered and paid out by Defendant; (2) Defendant's reviewing consultants conducted a file review only; and (3) Defendant rejected the medical evidence of record, specifically

5

the findings of Dr. Zia.

### I.     Conflict of Interest

The Court must consider potential conflicts of interest, including situations where the insurance company is both the "decision-maker, determining which claims are covered, and the payor of those claims." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005); *see also Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). A conflict of interest is just one factor considered in the Court's determination; it does not change the standard of review. *Glenn,* 128 S. Ct. at 2351. The Supreme Court recently ruled in *Glenn* that a conflict of interest is of greater importance where there is "a history of biased claims administration . . . ." *Id.* A conflict should not be a substantial factor, however, if the insurer has taken steps to reduce bias, such as "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking . . . ." *Id.* The First Circuit has interpreted these statements to mean that "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009).

Plaintiff argues there is a history of biased decision making on the part of Defendant as evidenced by prior lawsuits. Plaintiff cites *DeLisle v. Sun Life Assurance Co. of Canada*, as evidence of Defendant's history of biased decision making. 558 F.3d 440, 445 (6th Cir. 2009). In *DeLisle*, the court found that the plaintiff offered "more than conclusory allegations of bias" pointing to regular contact between the reviewers and Sun Life, including communication to conflicted reviewers portraying the claimant in a negative light. *Id.*

Conceding that such a conflict of interest existed in this case, Defendant asserts there is no evidence that its conflict of interest had any impact on the decision it reached on Plaintiff's claim. Defendant argues the claims practices cited in *DeLisle,* which occurred in 2002, are not indicative of Defendant's current claims practices.[1]

While *DeLisle* does show a history of bias decision making by Defendant, Plaintiff has provided no evidence of bias in the instant case. *See Swiger v. Continental Casualty Co.*, No. 05-255-ART, 2008 WL 1968346 (E.D. Ky. May 2, 2008) (where plaintiff offered no evidence that the conflict of interest affected decision to deny benefits the court accorded little to no weight to the conflict of interest). Plaintiff states it is not aware how frequently MacGuire has been employed by Defendant and has provided no statistical evidence showing bias when MacGuire is employed by Defendant. *See Kalish*, 419 F.3d at 508 (finding "[Plaintiff] has offered only conclusory allegations of bias with regard to Dr. Conrad [the reviewing physician]. [Plaintiff] failed to present any statistical evidence to suggest that, when retained by Liberty [the insurance company], Dr. Conrad has consistently opined that claimants are not disabled."). Plaintiff provided no evidence of improper communications between the reviewers and Defendant as in *DeLisle*. However, Defendant has provided no evidence it has taken steps to reduce bias. Based on this information, the Court finds that only slight weight is given to the inherent conflict of interest in the Court's arbitrary and capricious analysis.

**II. File Review and Evidence by Treating Physician Dr. Zia**

---

[1] Although Defendant asserts *DeLisle* is not indicative of its process in deciding this claim five years later with the benefit of the Supreme Court's decision in *Glenn*, Defendant has given no explanation of how its process has changed or the methods it has put in place to reduce bias as set forth by the Supreme Court in *Glenn*.

7

Plaintiff's file was reviewed by two internal medical consultants, William Walker and Dr. Lee Okuroswski, and one external medical consultant, Dr. Anne MacGuire. Each of the reviewing consultants based their opinions on records from Dr. Zia, Dr. Hayden, Dr. Harkleroad, and the Center for Integrative Medicine. None of the reviewing consultants conducted a physical examination of Plaintiff.

Walker, the first consultant, stated that "all claim documents, clinical records, correspondence, D-MAP entries, telephone transcripts, and contents of STD [short term disability] file were reviewed." SL 352. Walker provided a summary of all records reviewed and concluded it was unclear when fibromyalgia was diagnosed or became so severe as to interfere with work. Walker also concluded: "documentation supports the diagnosis of POTS, although she did not have severe postural signs documented . . . which would support this as a disabling condition"; "it is unclear whether there is any pathology preventing her from working with that arm [right arm] above shoulder level"; "[t]here is documentation supporting the restriction on use of her right hand based on the EMG evidence of carpal tunnel syndrome, which has not been addressed through any physical or occupational therapy, splinting, steroid injection, or surgical referral." SL 353.

Dr. Okuroswski reviewed all records of treatment and such review is evidenced by his summary of those documents reviewed. SL 356-360. Dr. Okuroswski concluded:

> It is unclear [in] the records as reviewed how the diagnoses of POTS and fibromyalgia specifically impacted the claimant's functional abilities at work. This is due to the paucity of clinical information that specifically addresses functional abilities and the results of objective clinical examinations and/or testing and/or diagnostic imaging to confirm and delineate these diagnoses.
> ***
> The claimant has EMG/NCS evidence of mild right CTS [Carpal tunnel Syndrome] and decreased nerve conduction (motor) across the right ulnar nerve, and no evidence of cervical radiculopathy. It is not entirely clear what degree this condition is limiting the claimant's functional abilities based on the lack of a

8

> comprehensive musculoskeletal and neurolgoical examination of the claimant's upper extremities.
>
> With that said, in individuals with mild CTS and ulnar nerve entrapment with shoulder symptoms, the following restrictions would be appropriate.
>
> For CTS, treatment would include limitations of repetitive motion activities with or without splinting nor (sic) more than 4 times per hour with avoidance of prolong periods in wrist [flexion] or extension. No max lift with the right upper extremity more than 20 lbs. For ulnar nerve entrapment, we would include no repetitive flexion and extension of the elbow. For the shoulder pain, we would include no lifting above chest height. The duration of these restriction would last approximately one month.

SL 360.

Dr. MacGuire stated specifically the records she reviewed, which included all medical records in Defendant's possession. SL 396-400. Dr. MacGuire concluded "[t]here are no physical conditions supported by the clinical evidence that are functionally impairing the claimant's ADLs or ability to work. The claimant has mild carpal tunnel syndrom in the right hand . . . . The medical records reviewed do not reflect this is a functionally impairing condition." SL 398. Dr. MacGuire went on to state, "[t]he claimant has no functional impairments. There is no evidence of limitation or the need for restrictions." SL 398. Additionally she stated, "Ms. Gupton's extensive neurologic and rheumatologic evaluations have failed to document evidence of any clinical functionally impairing musculoskeletal condition." SL 398.

First, the Court notes that conducting a file review only is not necessarily arbitrary and capricious. *Calvert*, 409 F.3d at 296 ("[W]e find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination."). It is, however, a factor to be considered in the Court's determination. *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006). "[T]he failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and

9

accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. Defendant's right to conduct a physical examination is explicitly provided for in the Plan. A physical examination of Plaintiff was never requested. Therefore, the Court considers this factor in its analysis.

"Nothing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). "As long as a plan administrator offers a reasonable explanation based upon the evidence for its decision, it may choose to rely upon the medical opinion of one doctor over that of another doctor." *Roumeliote v. Long Term Disability Plan for Employees of Worthington Industries*, 475 F. Supp. 2d 742, 746 (S.D. Ohio 2007), *aff'd* 292 Fed. App'x 472 (6th Cir. 2008). In this case, Defendant relied on the opinions of its reviewing consultants and physicians rather than Dr. Zia's recommendations.

In the first denial letter to Plaintiff referring to Defendant's decision, Defendant stated the records from Dr. Zia, Dr. Hayden, Dr. Harkleroad, and the Center for Integrative Medicine were reviewed by Defendant's medical staff. SL 366. Defendant further stated, "there is no support for restrictions that would preclude you from the material and substantial duties of your own occupation after September 30, 2007." SL 367. In the second denial letter to Plaintiff after Plaintiff's appeal, Defendant stated "all of the medical information . . . was referred to Anne MacGuire, MD for review." SL 392. Defendant then directly quoted from Dr. MacGuire's report regarding Plaintiff's claim. SL 392-393.

Because the Plan relied on the reviewing physician's reports, the Court looks to the reasonableness of those opinions. A file review is arbitrary and capricious when "the review has

been conducted by a doctor employed by the plan administrator who based his decision on selected portions of the administrative record or whose findings were inherently inconsistent or contradicted objective medical findings." *Smith v. Health Services of Coshocton*, 314 Fed. App'x 848, 860 (6th Cir. 2009). A file review may also be arbitrary and capricious if the reviewer makes credibility determinations and his conclusions stand in conflict with objective medical data contained in the administrative record. *Calvert*, 409 F.3d at 296-97.

Plaintiff argues that Dr. MacGuire reached a conclusion that was totally different than that of Dr. Zia and wholly inconsistent with the record. Defendant asserts the medical consultants considered the entire record available to them, relied on the entire file as a whole and did not arbitrarily discount certain portions, and made no credibility determinations. Defendant also states the decisions of the medical consultants were all premised on the lack of evidence about how Plaintiff's symptoms affected her functional abilities and were not in direct conflict with objective medical data contained in the administrative record.

The Court finds the decisions of the consultants reasonable. It appears from the reports of the consultants that none of them based their decision on selected portions of the record, but reviewed the entire record and considered each document therein. Unlike the review in *Calvert*, the medical consultants in this case provided thorough summaries of all the documents reviewed which show no gaps in the records that were reviewed. *Calvert*, 409 F.3d at 296-97 (file review held arbitrary and capricious when reviewer did not describe the data reviewed and made no mention of key medical records).

Additionally, the conclusions of the consultants were supported by the evidence in the administrative record. First, chiropractor Dr. Harkelroad, treated Plaintiff beginning in 1996,

11

including the time period at issue between December 2006 to July 2007. The chiropractor records state that on December 29, 2006, Plaintiff said, "working with hands above head aggravate it [pain in shoulders]." SL 318. On January 18, 2007, the records state Plaintiff "went back to office work . . . lot of paper shuffling bothered shoulders and neck." SL 321. On February 2, 2007, the records state Plaintiff's "[s]houlders . . . hurting today; really bothered her after her 8 hours of work [yesterday], did not rest at all last night." SL 322. Finally, on March 20, 2007, the records state, Plaintiff's "lower back hurts a lot working–walking a lot." SL 323. Dr. Harkelroad never assigned any functional limitations to Plaintiff, never offered any opinion with respect to Plaintiff's functional abilities, and never advised Plaintiff stop working.

Plaintiff was seen by Dr. Brandon Smith for acupuncture at the Center for Integrative Medicine Acupuncture & Natural Health. On October 15, 2007, records from Dr. Smith's office state that "patient need to stay on a fixed schedule in order to decrease her outbreaks of fibro." SL 290. Similarly, on June 19, 2007, the records state, "[p]atient needs to find a regular schedule to work. I talked with her about no heavy lifting." SL 292. Dr. Smith only mentioned Plaintiff's schedule and in ability to perform heavy lifting. He never advised Plaintiff to stop working or stated that she was functionally limited in performing her occupation.

Dr Hayden's records state on March 16, 2007, "any time she does any lifting of any significant amount, she is going to have problems." SL 328. At the follow up on April 16, 2007, the records state Plaintiff told Dr. Hayden she is having a lot of trouble in her job and is back on swing shift. SL 327. Plaintiff stated the fatigue and pain gets worse when she swings to a different shift. SL 327. Dr. Hayden stated that Plaintiff would have problems when she lifted a significant amount but did not restrict Plaintiff from work or advise Plaintiff to stop working.

Plaintiff was also treated by Dr. Zia, a neurologist. On March 2, 2007, Dr. Zia's records state he told Plaintiff to "[c]ontinue work as much as possible." SL 251. On August 2, 2007, Dr. Zia recommended Plaintiff "keep off work until EMS" test. SL 258. On September 5, 2007, Dr. Zia's records indicate "return to work–okay." SL 262. Again on October 3, 2007, Dr. Zia stated Plaintiff could return to work. SL 265. Dr. Zia's records include a letter stating Plaintiff "may return to work without any restrictions" dated October 3, 2007. SL 219.

On one Attending Physician Statement, Dr. Zia concluded Plaintiff could sit continuously for 8 hours, could stand for 2 hours, could not reach above shoulder level with her right arm, could perform fine finger movements and eye/hand movements with both hands, but could only push and pull with her left hand. SL 272. He stated Plaintiff could continuously lift up to ten pounds and frequently lift up to twenty pounds, although only occasionally able to life over twenty pounds. SL 272. Dr. Zia also stated that Plaintiff was totally disabled for her regular occupation, but would be able to resume "any work" on October 5, 2007.

Another Attending Physician Statement was provided on appeal of Defendant's initial denial. SL 372-374. In this document, Dr. Zia found Plaintiff could drive for one to three hours; sit for three to five hours; stand or walk for one to four hours; perform simple grasping in both right and left hands, but only firm grasping and fine manipulating with the left hand; Plaintiff can not climb kneel or crawl. SL 373. Dr. Zia stated that Plaintiff could not lift any weight with her right hand but up to twenty pounds with her left. SL 373. Finally, Dr. Zia stated that a sitting job would allow Plaintiff to work while impaired. SL 374.

After appeal of Defendant's initial denial, Plaintiff also submitted a "revised" letter from Dr. Zia which was dated October 3, 2007, but included a handwritten date of October 7, 2007 next to

13

the signature. This letter stated, Plaintiff "may return to work with restrictions. She can not stand for more than two hours. She can not do any heavy lifting, pushing or pulling." SL 389. This letter is inconsistent and in direct opposition to the prior letter with the same date written before denial of Plaintiff's claim.

The report of Dr. MacGuire regarding her file review specifically noted the "addendum . . . made by Dr. Zia noting no standing for more than two hours or heaving pushing lifting or pulling." SL 397. Defendant has provided a reasonable explanation for its decision to discredit these revised documents: these documents were inconsistent with Dr. Zia's prior recommendations with out objective support for the change in opinion. *See Rose v. Hartford Finacial Services Group, Inc.*, 268 Fed. App'x 444, 450-51 (6th Cir. 2008) (decision to credit opinions of independent medical examiners over that of treating physician upheld when two treating physicians were unwilling to comment and the third provided only a conclusory statement).

It is reasonable for the consultants to conclude, based on these records, there were no functional limitations of Plaintiff which make her eligible for long term disability. Accordingly, the Court finds that no greater or lesser weight is given to this factor.

The Court finds the decision of Defendant to deny Plaintiff's claim was not arbitrary and capricious. Although there is an inherent conflict of interest, there is no evidence of bias impacting this decision. A thorough review of the record was conducted by two internal medical consultants and one external medical consultant, even though no physical exam was performed. Defendant also had a reasonable explanation for following the opinion of the consultants rather than that of the treating physician. The Court believes these factors, taken as a whole, support a finding that Defendant engaged in a "deliberate principled reasoning process . . . supported by substantial

14

evidence." *Evans*, 434 F.3d at 876.  Plaintiff's claim is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is DENIED, and Defendant's cross motion is GRANTED.  An appropriate order shall issue.